**FILED**
**JUNE 14, 2022**
In the Office of the Clerk of Court
WA State Court of Appeals Division III



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| VENTURES TRUST 2013-I-H-R by MCM CAPITAL PARTNERS, LLC, it's trustee, a trust company, | ) ) ) ) | No. 38016-5-III |
| Respondent, | ) ) | |
| v. | ) ) | |
| TRACEY M. BROWN, an individual; and TERRY L. BROWN, an individual, | ) ) ) | |
| Appellants, | ) ) | UNPUBLISHED OPINION |
| AMERICANWEST BANK, a Washington state banking corporation; and DOES 1 through 10, inclusive, and ROES 1 through 10, inclusive, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| TRACEY M. BROWN, an individual; and TERRY L. BROWN, an individual, | ) ) ) | |
| Appellants, | ) ) | |
| v. | ) ) | |
| VENTURES TRUST 2013-I-H-R by | ) | |

No. 38016-5-III
*Ventures Tr. 2013-I-H-R by MCM Capital Partners, LLC v. Brown*


MCM CAPITAL PARTNERS, LLC, it's )
trustee, a trust company; BANK OF )
AMERICA, N.A.; RECONTRUST )
COMPANY, N.A.; and SERVIS ONE, )
INC. d/b/a BSI FINANCIAL SERVICES, )
                                           )
                 Respondents. )

PENNELL, J. — Tracey and Terry Brown appeal from separate summary judgment orders dismissing of their claims under the Consumer Protection Act (CPA), chapter 19.86 RCW, against Ventures Trust 2013-I-H-R (Ventures Trust), Bank of America, N.A. (BANA), ReconTrust Co., N.A. (ReconTrust), and Service One, Inc., d/b/a BSI Financial Services (BSI). We affirm.

FACTS

On March 30, 2006, BANA loaned Tracey and Terry Brown $288,000 to purchase property in Franklin County, Washington. The loan was secured by a deed of trust in favor of BANA. The deed of trust stated that upon default under the loan, BANA could invoke the power of sale. The deed of trust also stated the property "is not used principally for agricultural purposes." Clerk's Papers (CP) at 558.

The Browns' property was zoned as "Farm and Agricultural Land," as reflected in a title report issued in connection with the loan and deed of trust. *Id*. at 863. At the time of the purchase, the Browns were not using the land for agricultural purposes, but

2

intended to do so in the foreseeable future. The previous owners of the property had used the property for agricultural purposes. Nevertheless, the principal reason the Browns purchased the property was for use as a residence.

The Browns were only able to generate approximately $2,500 a year from farming between 2009 and 2011. In 2011, the Browns' farming activities were confined to ornamental gourds.

The Browns stopped making payments on their loan in 2009. In 2010, they received a notice of default from ReconTrust, who was listed in the notice of default as "'agent for beneficiary.'" *Id*. at 383. The notice of default stated the principal balance of the debt remaining was $277,048.19. After some unsuccessful attempts at modification, ReconTrust nonjudicially foreclosed on the Browns' property in September 2011.

The Browns contested the foreclosure, retaining an attorney. After negotiations, BANA agreed to file an action to rescind the foreclosure and reinstate the Browns' loan and the deed of trust. The Franklin County Superior Court subsequently entered a stipulated judgment, granting the agreed resolution. The court's order did not explain the basis for the judgment, nor was there a finding of fault. The order stated each party was

3

responsible for its own attorney fees and costs related to the suit. The Browns continued to reside uninterrupted at their property.

Throughout 2013 and 2014 the Browns and BANA unsuccessfully attempted to modify the terms of the loan. During this time frame, BANA sent loan statements to the Browns listing moneys owed. On May 7, 2014, the Browns received a payoff statement from BANA listing $3,925.25 in "other amounts due." CP at 572. The statement explained the "[o]ther amounts due" were largely related to the 2011 nonjudicial foreclosure. The Browns noticed the outstanding fees appeared to be included in previous loan statements from BANA. The Browns asked their attorney to challenge the "[o]ther amounts due," CP at 572, because they believed the 2011 nonjudicial foreclosure was illegal. In a payoff statement dated May 16, 2014, BANA eliminated the fees. The Browns never paid the fees.

On September 30, 2014, BANA sold the Brown's loan to Ventures Trust. The new loan servicer was BSI. On October 16, 2014, the Browns received a letter from BSI. This letter stated the principal balance on the loan was $275,294.86, and the total debt including interest, principal, and fees was $404,284.01. The letter gave the Browns 30 days to submit a challenge if they disagreed with the amounts owing. They did not do so.

4

BSI sent the Browns escrow disclosure statements in December 2014 and February 2015. The first statement documented an escrow shortage of $49,434.94. It was accompanied by a letter stating BSI would no longer be collecting monthly escrow on insurance. The February 2015 escrow statement documented an escrow shortage of $41,195.80.

BSI sent the Browns notices of default and intent to accelerate in January and July 2015. The January statement noted the listed $118,585.26 as the amount necessary to cure default. The July statement listed $179,006.17 as the amount necessary to cure default.

Throughout 2015, the Browns' attorneys negotiated with BSI to obtain a loan modification. The Browns also utilized their attorney to investigate the amount due on their loan, as they were confused by the changing amounts in various statements sent by BANA and BSI.

On June 7, 2016, Ventures Trust filed a complaint for judicial foreclosure against the Browns based on their default of the loan. On October 2, 2017, the Browns filed an amended answer to the complaint, raising a counterclaim against Ventures Trust, and what they characterize as counterclaims or cross claims against BSI, BANA, and

ReconTrust for violations of the CPA.[1] The Browns argued the defendants violated the

CPA through (1) misrepresentations in loan statements as to the amount the Browns

owed, and (2) violations of Washington's deed of trust act (DTA), chapter 61.24 RCW,

related to the September 23, 2011, foreclosure.[2] The Browns claimed to be entitled to

offset their loan with a judgment on the counterclaims raised in their answer.

On April 20, 2018, the Browns agreed to a loan modification. As a result, Ventures

Trust and the Browns stipulated to an order dismissing Ventures Trust's claim for judicial

foreclosure. The stipulated order of dismissal did not address the Browns' counterclaims.

The trial court subsequently disposed of the Browns' claims on summary judgment. The

Browns now appeal the orders on summary judgment.

## ANALYSIS

Civil claims may be resolved short of trial through the summary judgment process

when there are no genuinely disputed issues of fact for trial. *Lybbert v. Grant County*,

---

[1] BSI, BANA, and ReconTrust have not challenged the characterization of the claims asserted against them as counterclaims or cross claims, so we refer to them as such.

[2] The Browns would later clarify these violations included an unlawful nonjudicial foreclosure on agricultural land, and that ReconTrust could not serve as a foreclosing trustee because it lacked a physical address and telephone within the state of Washington.

141 Wn.2d 29, 34, 1 P.3d 1124 (2000). We review summary judgment rulings de novo, "performing the same inquiry as the trial court." *Colo. Structures Inc. v. Blue Mountain Plaza, LLC*, 159 Wn. App. 654, 661, 246 P.3d 835 (2011).

Summary judgment involves a burden shifting process. A party defending against a legal claim can move for summary judgment by showing the absence of evidence in support of the claimant's case. *Young v. Key Pharm. Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If this is met, the burden shifts to the claimant as the party with the ultimate burden of proof at trial. *Id.* The claimant must proffer the existence of admissible evidence sufficient to sustain each element of its case. *Id.* (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L .Ed. 2d 265 (1986). "The facts set forth must be specific, detailed, and not speculative or conclusory." *Manna Funding, LLC v. Kittitas County*, 173 Wn. App. 879, 887-88, 295 P.3d 1197 (2013). If the claimant fails to produce sufficient facts, the defending party is entitled to judgment as a matter of law. *Young*, 112 Wn.2d at 225.

The issue here is whether the Browns have proffered sufficient admissible facts to overcome summary judgment dismissal of their CPA claims. The elements of a CPA claim are: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce,

7

(3) affecting the public interest, (4) injury to a person's business or property, and (5)

causation. *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 782, 295 P.3d 1179 (2013).

The Browns have identified three actions they allege form the basis of their CPA

claims: (1) nonjudicial foreclosure of agricultural land, (2) misrepresentations on loan

statements, and (3) the failure of the foreclosure trustee (ReconTrust) to maintain a street

address in the state of Washington. We discuss each claim in turn.

*1. Nonjudicial foreclosure of agricultural land*

Washington law prohibits nonjudicial foreclosure on land principally used for

agricultural purposes. RCW 61.24.030(2). The Browns claim BANA and ReconTrust

violated this prohibition by initiating a nonjudicial foreclosure against their property in

2011. The Browns further allege that the wrongful foreclosure of their property in 2011

cost them damages in the form of attorney fees, lost insurance coverage, and lost business

opportunities.

We agree with BANA and ReconTrust that the Browns' nonjudicial foreclosure

allegations fail to meet many of the requirements for a CPA claim. Two required elements

are salient.

First, the Browns have not shown an unfair or deceptive act or practice. There is

no evidence in the record that the Browns' land was principally used for agricultural

purposes as required by RCW 61.24.030(2). The Browns hoped to use their land for agricultural purposes. And zoning regulations would have allowed for this to take place. But aspirations and permission are not enough under the statute. The primary purpose of the Browns' property has been residential, not agricultural. While the Browns have engaged in some agricultural activities on their land, their agricultural work was never significant and did not render the property *primarily* agricultural. *Gardner v. First Heritage Bank*, 175 Wn. App. 650, 673, 303 P.3d 1065 (2013).

Second, the Browns have not shown a public impact. As relevant here, a private CPA claim requires the plaintiff to show the defendant's deceptive act or practice "(a) injured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons." RCW 19.86.093(3).[3] The CPA is not intended to apply to acts or practices that "are not injurious to the public interest." RCW 19.86.920. To meet the burden of proving capacity to injure others, the plaintiff to a CPA claim must

---

[3] RCW 19.86.093 addresses the public interest element of a CPA claim. In addition to showing injury to others or capacity to injure others as contemplated by RCW 19.86.093(3), public interest may be shown by a per se deceptive act or practice that violates a statute incorporated by the CPA (RCW 19.86.093(1) or one that violates a statute containing a specific legislative declaration of public interest impact (RCW 19.86.093(2)). Neither statutory basis for finding public interest is applicable here.

prove a deceptive "act or practice that has the capacity to deceive substantial portions of the public." *Klem*, 176 Wn.2d at 787.

Nothing in the record here shows BANA or ReconTrust have initiated nonjudicial foreclosures against agricultural property belonging to others or that they have adopted a practice or activity that puts the public at risk of agricultural properties being subject to nonjudicial foreclosure. The Browns theorize that, because BANA and ReconTrust initiated nonjudicial foreclosure against their land, there is a risk that similar actions will be taken against others. This argument amounts to nothing more than speculation; it is insufficient to defeat a claim for summary judgment. *Brown v. Brown*, 157 Wn. App. 803, 817, 239 P.3d 602 (2010).

Because the Browns lack evidence to support the first two elements of a CPA claim, BANA and ReconTrust are entitled to summary judgment on the issue of whether the Browns' property could be subject to nonjudicial foreclosure.

*2. Misrepresentation on loan statements*

The Browns assert that BANA and Ventures Trust provided them with inconsistent and confusing statements concerning their loan balances. They also allege BANA wrongfully included foreclosure fees on some of their loan statements. These aspects of the Browns' CPA claim fail for lack of proof of public impact.

The Supreme Court's decision in *Klem* illustrates how loan practices can impact the public interest by virtue of an act or practice that has the capacity to injure the public. *Klem* involved alleged misconduct by a loan servicing company acting as the trustee of a deed of trust. Evidence showed the trustee's misconduct was the product of the company's "common practice(s)" and a specific agreement it had with the lender. *Klem*, 176 Wn.2d at 777-78. It does not appear that the plaintiff in *Klem* had shown that other debtors were harmed by the trustee's misconduct. Nevertheless, the public interest component of the CPA was met by evidence that the trustee's misconduct was part of the organization's institutionalized practices.

Here, the Browns have not demonstrated that any of their complaints regarding misleading or confusing loan statements were the result of an institutionalized practice or procedure that has harmed others or has the capacity to do so. The hypothetical possibility that BANA or Ventures Trust, as large institutions, could send deceptive or confusing loan statements to other debtors is not sufficient to sustain a CPA claim. *See Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 200 P.3d 695 (2009).[4]

---

[4] During oral argument, counsel for the Browns suggested *Mosquera-Lacy* may no longer be good law because it addressed an earlier version of the CPA. However, *Mosquera-Lacy* is a case relied on by the Browns in their opening brief. Appellants' Opening Br. at 39. It is unclear how *Mosquera-Lacy* might conflict with the current version of the statute.

*3. Foreclosure trustee's failure to maintain a Washington address*

The Browns' final claim is that ReconTrust violated Washington law by failing to maintain a street address in the state of Washington as required by RCW 61.24.030(6). This allegation has factual support and it is conceivable that this could constitute a deceptive act, occurring in trade or commerce, with a public impact as contemplated by the CPA. But these are only three of the five elements of a CPA claim. To withstand summary judgment, the Browns must also show injury and causation.

A CPA claim requires proof of proximate cause "between the misrepresentation and the plaintiff's injury." *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 83, 170 P.3d 10 (2007). If "expense[s] would have been incurred regardless of whether a violation existed, causation cannot be established." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 64, 204 P.3d 885 (2009). In *Blair v. Nw. Tr. Servs., Inc.*, 193 Wn. App. 18, 37, 372 P.3d 127, *review denied* 186 Wn.2d 1019, 383 P.3d 1021 (2016), this court held that, in the foreclosure context, causation requires a CPA plaintiff to link their injury to a lender or trustee's specific law violation.

In their opening brief, the Browns explain their causation theory as follows:

But for BANA and ReconTrust wrongfully non-judicially foreclosing on the Browns' Property, a reasonable trier of fact could conclude that the Browns would not have sustained the injuries and damages asserted above. But for the wrongful foreclosure, the Browns would not have hired [their attorney]

> Mr. Leen to undo the wrongful foreclosure. But for the wrongful
> foreclosure, the Browns would not have missed out on two years of
> growing. But for the wrongful foreclosure the Browns would have been
> named insured at a time when they experienced massive water damage and
> black mold in their home, thereby enabling them to make a claim for repair
> of those damages.

Appellants' Opening Br. at 37.

The summary way in which the Browns have addressed causation makes it difficult for us to parse and assess. The Browns do not dispute that they had been in default on their loan for several years, thereby necessitating that they spend money and energy negotiating to stay in their home. Nothing beyond speculation links the Browns' agricultural or insurance struggles with the 2011 foreclosure or ReconTrust's failure to have a physical address in the state of Washington. An assertion of wrongdoing followed by later injury is not sufficient to establish proximate cause. The record is clear that the Browns were never evicted from their home or restrained from using their property. The Browns have failed to produce evidence indicating ReconTrust's violation of the DTA proximately caused any of their injuries.

Even if the Browns could prove causation, their CPA claim would still fail based on expiration of the statute of limitations. Under the CPA, the Browns had four years to bring their claim. RCW 19.86.120. ReconTrust's nonjudicial foreclosure occurred in the

13

fall of 2011.[5] Although the Browns claim they suffered ongoing harm from the

nonjudicial foreclosure, there are no allegations that ReconTrust engaged in any

wrongdoing after the fall of 2011. To state a CPA claim against ReconTrust for pursuing

a nonjudicial foreclosure without abiding by Washington law requiring it to have a street

address and physical presence in the state of Washington, the Browns would have needed

to file their claim by the fall of 2015. That did not happen. Accordingly, the Browns'

CPA claim regarding ReconTrust's failure to have a Washington office is barred by

the statute of limitations.

The Browns assert they can avoid the statute of limitations under a theory of

recoupment. Recoupment is an equitable defense that is not barred by the statute of

limitations, "so long as the main action itself is timely." *Seattle First Nat'l Bank, N.A. v.*

*Siebol*, 64 Wn. App. 401, 407, 824 P.2d 1252 (1992). "A successful recoupment defense

acts to reduce the amount a plaintiff can recover." *Ho v. Rubin*, 333 N.J. Super. 599, 756

A.2d 643, 647 (Ch. Div. 1999), *aff'd*, 333 N.J. Super. 580, 756 A.2d 633 (App. Div.

2000). However, recoupment must arise from the same transaction as the plaintiff's

claim. *Id*. It does not apply to separate grievances. *Id*. *See* Michael E. Chaplin, *Reviving*

---

[5] The trustee sale occurred on September 23, 2011, and the trustee's deed was recorded on October 12, 2011. See CP at 394.

*Contract Claims Barred by the Statute of Limitations: An Examination of the Legal and Ethical Foundation for Revival*, 75 NOTRE DAME L. REV. 1571, 1574-1581 (2000).

The Browns' recoupment claim fails for a couple of reasons. First, neither BANA nor ReconTrust have filed a claim against the Browns from which the Browns could recoup their losses; the only plaintiff that has sought judgment against the Browns is Ventures Trust. Secondly, in December 2018 Ventures Trust stipulated to dismissal of its complaint for judicial foreclosure against the Browns; thus, the Browns are no longer in a position to offset losses that might stem from an adverse judgment. The statute of limitations is applicable in this case and cannot be avoided under a theory of recoupment.

## APPELLATE ATTORNEY FEES

Ventures Trust requests an award of attorney fees pursuant to the loan document's attorney fees provisions. We grant this request pursuant to RCW 4.84.330 and RAP 18.1(a).

## CONCLUSION

The trial court's summary judgment orders are affirmed. Ventures Trust is awarded reasonable attorney fees on appeal, subject to its compliance with RAP 18.1(d). The Browns' motion for judicial notice is granted.

A majority of the panel has determined this opinion will not be printed in the

No. 38016-5-III
*Ventures Tr. 2013-I-H-R by MCM Capital Partners, LLC v. Brown*

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Fearing, J.